Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000016
26-AUG-2016
09:57 AM

NO. CAAP-16-0000016

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

FC-S NO. 13-00110
IN THE INTEREST OF TA, KA, AS

and

FC-S NO. 14-00216
IN THE INTEREST OF CC

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 13-00110 and FC-S NO. 14-00216 )

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)

Appellant Mother (**Mother**) appeals from the Orders Concerning Child Protective Act, filed on November 24, 2015, in FC-S No. 13-00110, and the Orders Concerning Child Protective Act, filed on November 24, 2015, in FC-S No. 14-00216 (collectively, **Orders**), all filed in the Family Court of the First Circuit (**Family Court**).[1]  The Orders imposed family supervision over Mother's four children, including (at the

---

[1]  The Honorable Steven M. Nakashima presided.

relevant time) two infants, a toddler, and a young school-aged child.

Mother claims that the Family Court erred by finding that the childrens' physical or psychological health or welfare had been harmed or was subject to threatened harm by the acts or omissions of the childrens' family sufficient to warrant family supervision.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's point of error as follows:

On appeal, Mother objects to several Findings of Fact and argues that the Family Court erroneously found that Mother could be an unidentified perpetrator of her child's broken leg.

When a petition for supervision is filed, the Family Court must conduct a return hearing and decide whether the child's physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts or omissions of the child's family, whether the child should be placed in foster custody or under family supervision, and what services should be provided to the child's parents. Hawaii Revised Statutes (HRS) § 587A-28(a) and (c) (Supp. 2015). "'Preponderance of the evidence' shall be the standard of proof required in any proceeding, unless otherwise specified." HRS § 587A-4 (Supp. 2015). "Preponderance of the evidence means the degree of proof, which as a whole, convinces the trier of fact

that the fact sought to be proved is more probable than not."
Id.

By a preponderance of the evidence, Mother could not be ruled out as the perpetrator of harm to her child, AS. It is undisputed that AS was eighteen-weeks old, non-verbal, and nonambulatory at the time that he suffered a spiral fracture of his left leg. Dr. Kevin Kon (**Dr. Kon**), a pediatric radiologist, concluded from an x-ray taken on April 22, 2013 that his best estimate was that the injury occurred between zero and eleven days prior, but it could have been up to fourteen days prior, based on medical studies because there was no sign of bone healing. Dr. Kon also stated that it would be very difficult for a child that could not walk to cause an injury like that to himself.

Dr. Kayal Natarajan (**Dr. Natarajan**), a pediatrician and child abuse expert, concluded that given the child's medical history, lack of explanation as to how the injury occurred, and lack of medical reason for the injury, that child abuse was the cause of a broken leg to AS. She opined that the child could not have injured himself due to the significant amount of force required to cause such an injury. Thus, by a preponderance of the evidence, AS's injury was inflicted upon him by someone else, anywhere from zero to fourteen days prior.

Both Mother and Father denied causing AS's broken leg. AS stayed with Father from April 11, 2013, to April 21, 2013. Father stated that he did not notice anything unusual about AS on Sunday, April 21, 2013, and in fact, AS kicked his left leg

3

repeatedly while Father played with him. At approximately noon on Sunday, Father transferred AS to Mother's custody. Mother stated that AS was cranky and fussy on the way home, but he was not screaming. She thought it was due to being sick or asthmatic. Mother noted that nothing out of the ordinary happened throughout the night or the next morning.

However, the next day, Monday, April 22, 2013, at about noon, AS's caregiver texted Mother stating that she thought something was wrong with AS's leg. Later that day, AS was dropped off at his maternal grandmother's home at about 5:30 p.m. and the grandmother noticed that AS had swelling in his left leg. When Mother arrived later at the grandmother's home, she touched AS's left leg and he began to cry hysterically. AS was taken to the hospital by Mother that evening at about 7:00 p.m. Mother contends that, based on the reported swelling of AS's leg, Dr. Natarajan stated that the leg was broken prior to AS being returned to Mother. However, Dr. Natarajan's testimony was equivocal; she testified that she could not give a determination of whether it was more likely than not that AS's injury occurred before or after AS was picked up from Father.

In addition, Mother testified that she did not think that AS was injured when he was returned to her care on Sunday at noon because AS did not display any indication that his left leg was in pain from being broken. Dr. Kon concluded that AS's leg could have been broken between zero and up to fourteen days prior to being examined on Monday evening. Thus, Mother could not be

ruled out as the perpetrator of harm to AS because his injury could have occurred when in Mother's care.

"'Family supervision' means the legal status in which a child's legal custodian is willing and able, with the assistance of a service plan, to provide the child with a safe family home." HRS § 587A-4. "'Family home' means the home of the child's legal custodian." Id. Alisa Imakyure, a Department of Human Services (DHS) social worker, testified that Mother completed a substantial amount of services and was able to demonstrate progress, had a support system, and had a transition and respite plan. Thus, DHS requested family supervision instead of foster custody of the children. However, DHS also concluded that due to the infancy of Mother's youngest child in the home, that child was particularly vulnerable. Thus, family supervision over all four children residing with Mother was warranted. We conclude that the Family Court did not clearly err in its Findings of Fact and did not abuse its discretion in ordering family supervision in this case.

Therefore, the Family Court's November 24, 2015 Orders are affirmed.

DATED: Honolulu, Hawai'i, August 26, 2016.

On the briefs:

Herbert Y. Hamada,
for Mother-Appellant.

Mary Anne Magnier,
Jonathan M. Fujiyama,
Deputy Attorneys General,
for Petitioner-Appellee.

Presiding Judge

Associate Judge

Associate Judge